[Cite as *State v. Duru*, 2022-Ohio-1641.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| STATE OF OHIO, | : | | JUDGES: |
| | : | | Hon. W. Scott Gwin, P.J. |
| Plaintiff - Appellee | : | | Hon. William B. Hoffman, J. |
| | : | | Hon. Craig R. Baldwin, J. |
| -vs- | : | | |
| | : | | |
| MARTI C. DURU, | : | | Case No. 2021 CA 00018 |
| | : | | |
| Defendant - Appellant | : | | O P I N I O N |

CHARACTER OF PROCEEDING:               Appeal from the Fairfield County
                                       Court of Common Pleas, Case No.
                                       20-CR-399

JUDGMENT:                              Affirmed

DATE OF JUDGMENT:                      May 16, 2022

APPEARANCES:

For Plaintiff-Appellee                 For Defendant-Appellant

CHRISTOPHER A. REAMER                  SCOTT P. WOOD
FAIRFIELD COUNTY PROSECUTOR'S OFFICE   Conrad/Wood
239 West Main Street, Suite 101        120 East Main Street, Suite 200
Lancaster, Ohio 43130                  Lancaster, Ohio 43130

*Baldwin, J.*

{¶1}    Appellant, Martin C. Duru, appeals the verdict of the jury in the Fairfield County Court of Common Pleas finding him guilty of the offense of Tampering with Evidence, a third degree felony, in violation of R.C. 2921.12(A)(2).  The State of Ohio is the appellee.

## STATEMENT OF FACTS AND THE CASE

{¶2}    Appellant, Martin C. Duru, operated Radiant Home Healthcare, a business providing home healthcare, adult daycare and State Tested Nurse Aid training. Duru contended that the nature of his business and the employee pool created a high turnover rate for employees.  At the time of the alleged offense, Duru was in the process of interviewing A.R., a potential employee.

{¶3}    Mindy Morris, a close friend of A.R. and a Radiant employee, persuaded A.R. to apply for employment at Radiant as a home health aide.  A.R.'s car was not operating, so on February 18, 2019, Morris gave A.R. a ride to Radiant for an interview with Duru. They entered the building to find Duru alone.  Morris attempted to leave, but her car would not start so she called her mother for a ride and went back into Radiant where she found A.R. and Duru talking.  She did not see anyone in the building other than A.R. and Duru and both were involved in the employment interview when Morris left the building.

{¶4}    As part of the interview process, Duru led A.R. through the various rooms in the building and ended the tour when they reached a room Duru described as the "quiet room." Duru explained that this room was set aside as a respite for Alzheimer and dementia patients, away from the busier areas of the business.   A.R. claimed that Duru

assaulted her within that room. Because Duru was acquitted of the gross sexual imposition and abduction charges the details of the assault are unnecessary for the resolution of this appeal and will not be recounted.

{¶5}    After the alleged assault, A.R. called Stephen Thurn, the father of one of her children, to pick her up at Radiant.  He arrived shortly thereafter, entered the building and was introduced to Duru.  He noticed no one other than A.R. and Duru in the building. As they left Radiant, A.R. disclosed details about the assault and Thurn wanted to confront Duru, but A.R. "talked [him] out of it." (Transcript, p. 423, lines 19-20).

{¶6}    A.R. reported the offense to Sergeant Kelly Walker of the Fairfield County Sheriff's Office shortly after 3:00 p.m. on the day of the offense. Walker took a written statement from A.R. and visited Duru at 4:55 p.m. the same day.  When Sergeant Walker arrived, she did not notice anyone present at Radiant other than Duru, and, when she spoke with Duru, he did not claim that anyone was present during the alleged offense other than he and A.R. Walker asked if anyone else was present in the building that day and Duru mentioned that Morris was present earlier and had left the building.  Duru did not mention any other employees that were present that day.

{¶7}    Walker ended the interview with Duru at 5:21 p.m. and forwarded a report to the city law director. The city law director referred the case to the county prosecutor and additional investigation was requested.  The matter was presented to the grand jury and an indictment was issued, charging Duru with Gross Sexual Imposition in violation of R.C. 2907.05(A)(l) and Abduction in violation of R.C. 2905.02(A)(2). Duru surrendered to the court on the outstanding warrant and, during his initial appearance his counsel disclosed that a third person was present at Radiant at the time of the alleged offense.

On November 3, 2020 Duru provided the state with the name of the eyewitness, Racheal Wheeler, her phone number and described her as a Radiant employee.

{¶8} Detective Bryan Kohler of the Fairfield County Sheriff's Office interviewed Wheeler on November 4, 2020 and January 15, 2021. Det. Kohler appeared at her residence, unannounced, on November 4, 2020 at 9:00 a.m. and Wheeler spoke with him. She claimed that she saw A.R. on the bed in the quiet room and Duru on a chair beside the bed and that, after A.R. left, she spoke with Duru.

{¶9} Det. Kohler requested Wheeler's phone number and she provided the number 740-684-2932. She claimed curiosity regarding his request for a cell phone number and asked what could be done with that number. Det. Kohler explained that they may be able to obtain data from the service providers that would lend credence to her contention that she was present at Radiant on the day of the alleged assault. She did not mention that the phone with the number 740-684-2932 was not in her possession that day. Det. Kohler later obtained a second cell phone number, allegedly belonging to Wheeler's husband. Both numbers were forwarded to the state's expert, Robert Moledor, for further investigation.

{¶10} As a result of Det. Kohler's interview and Moledor's review of the cell phone data, the state subpoenaed Wheeler's employment records from Arbors at Carroll and Pizza Crossing. The applications for employment for both contained the phone number 740-684-2932; one also contained the number 740-270-9468, Wheeler's husband's number. After receiving that information, and the analysis of the cell phone data, a second interview of Wheeler was scheduled for January 15, 2021.

**{¶11}** Wheeler appeared voluntarily at the prosecutor's office for her second interview where she provided additional pertinent information. She confirmed that she was paid with paper checks from Radiant in February 2019 that were cashed at two retail stores in Logan, Ohio. She never claimed to have been paid cash by Radiant during this interview. She did disclose that she opened bank accounts at PNC and Merchant's Bank. The state issued subpoenas for the records for those bank accounts and, after discovering that Radiant was using Chase Bank for its operating account, the state subpoenaed those records as well.

**{¶12}** During this interview, Wheeler stated that she had direct contact with A.R. and asked her if she wanted to wait outside for her boyfriend. She also stated that she saw Duru speaking with the "lady detective" on February 18, 2019 before she left for her shift at Pizza Crossing that night and that she spoke with Duru that evening before leaving for work. She claimed that she arrived for work at Pizza Crossing at 5:58 p.m.

**{¶13}** Wheeler provided records in response to a subpoena issued by the state, and included in those records check stubs reflecting payment of salary and related deductions. Det. Kohler examined the records and found that the pay stubs Wheeler offered for the pay period beginning February 2, 2019 and ending February 15, 2019 and the pay period from February 16, 2019 to March 1, 2019 matched checks that were issued to different employees, not Wheeler. Det. Kohler confirmed that the bank records for Radiant did not contain any checks issued for Wheeler before the check dated July 16, 2019, long after the alleged assault.

**{¶14}** Det. Kohler also noted a discrepancy between the value of the checks Radiant issued to Wheeler and the amount on her W-2. The total value of the checks was $5,933.67 but the W-2 reflected payment of $4,933.50.

**{¶15}** Det. Kohler also visited Radiant and took photographs of the interior. He discovered that the room that Wheeler claimed she was in when she observed Duru and A.R. in the quiet room had an obstructed view into the quiet room where the offense allegedly occurred and that Wheeler would have no view of the quiet room as she stood behind the desk in that room.

**{¶16}** The state served a subpoena on Wheeler at the second interview seeking work schedules and bank statements, but Duru moved to quash the subpoena. The parties agreed that Duru would provide those documents if they were in his possession and, on February 12, 2021, Duru delivered employment documents, tax documents, time sheets, and pay stubs to the prosecution. Wheeler later provided a similar packet of documents in response to a subpoena, after she was indicted in a related case, with the admission that she obtained the documents from Duru.

**{¶17}** After the state received the responses to the subpoenas, the grand jury issued a superseding indictment adding a charge for Tampering with Evidence in violation of R.C. 2921.12(A)(2) finding that the documents regarding Wheeler's employment provided by Duru were fabricated. The state based this allegation on expert analysis of Wheeler's cell phone records and other employment records interpreted by the state as demonstrating that Wheeler was not present at Radiant on February 18, 2019. This evidence was gathered after Duru and Wheeler responded to their respective subpoenas, so they had no knowledge of this information prior to the response. This evidence was

provided to Duru in a supplemental discovery response, so both Duru and Wheeler were aware of the evidence prior to trial.

{¶18} The case was presented to the jury over three days, from May 4 to May 7, 2021. With regard to the sexual assault case, Wheeler claimed that she was an employee of Radiant on the day of the alleged assault, that she was present at Radiant's office that day and that no assault occurred. The state provided evidence that Wheeler that was not an employee on the date of the assault and that she was not at Radiant's office on that date.

{¶19} Robert Moledor, an expert in the interpretation of historical cellular data and cellular tower information. testified that that he was able to create a map of the usage of the phone number that Wheeler had provided to Detective Kohler as her cell phone number. The map showed that Wheeler's phone was in Logan where she worked at Pizza Crossing and in New Straitsville, where she lived at 1:59 p.m., 4:21 p.m. and 5:55 p.m. on February 18, 2019. This information supported a conclusion that she was not working at Radiant from 10:30 a.m. to 5:00 p.m. as represented in the documents submitted by Duru and Wheeler. Moledor also testified, during rebuttal, that Wheeler's claim she was at Radiant on February 20, 2019 and February 25, 2019 was contradicted by her cellphone records.

{¶20} At trial, Wheeler attempted to convince the jury that a third party had her phone and was responsible for the discrepancy between her professed location and the location of the phone. The state confronted Wheeler with the fact that she had not disclosed that the phone was given to this third party when questioned prior to trial and that her trial testimony was the first time that she revealed this information.

**{¶21}** The state introduced Wheeler's employment applications from Pizza Colony and both applications reflected that Wheeler began her employment at Radiant in October 2019, several months after the alleged assault. The witness from Arbors at Carroll confirmed the dates of employment by calling Radiant and allegedly speaking with Duru. Further, the application for employment at Arbors at Carroll contained a description of Wheeler's job duties as a home health aide, but did not reflect that Wheeler had been employed to conduct any marketing as she had claimed in her interviews with Det. Kohler.

**{¶22}** Radiant issued no paper paychecks for the pay period containing the date of the alleged assault, contradicting Wheeler's claim that she received and cashed paper paychecks. Radiant did provide Wheeler check stubs reflecting a salary and withholding of taxes, but no matching checks were issued. Instead, both Duru and Wheeler contended that Wheeler requested that she be paid in cash because she was hiding from an abusive husband.

**{¶23}** The state presented testimony from a representative of the Audit Division of the State of Ohio Department of Tax who confirmed the Department had no record of any business tax accounts for Duru or Radiant for the year 2019 and therefor no record that taxes had been withheld from Wheeler's salary, further contradicting the paystubs submitted by Duru and Wheeler. He explained that the Department's records would reflect that withholdings had not been paid by Radiant for Wheeler or for any employee of Radiant. He did confirm that Wheeler filed an income tax return listing Radiant as an employee, but the return does not list dates of employment.

**{¶24}** Duru explained the lack of withholding as the result of his poor health, the death of his accountant and his inability to complete the necessary tasks to insure that the withholding were properly paid and recorded.

**{¶25}** The state presented the testimony of Mindy Morris who confirmed that she was an employee of Radiant who did not know or recognize Wheeler. Duru countered by explaining that most of Wheeler's tasks were accomplished from home, and that employees such as Morris worked in patient's homes and would have very few opportunities to mingle with other Radiant employees.

**{¶26}** Duru also pointed out that no other Radiant employees were called by the state to testify that they did not know or recognize Wheeler. In fact, there is no evidence in the record that anyone other than Duru was aware of Wheeler's employment.

**{¶27}** The jury returned a verdict of not guilty of Gross Sexual Imposition in violation of R.C. 2907.05(A)(l) and Abduction in violation of R.C. 2905.02(A)(2), but rejected Duru's explanation of the circumstances surrounding Wheeler's whereabouts on the day of the alleged offense and found him guilty of Tampering with Evidence in violation of R.C. 2921.12(A)(2).

**{¶28}** Duru filed a timely appeal and submitted one assignment of error:

**{¶29}** "I. THE VERDICT OF GUILTY OF TAMPERING WITH EVIDENCE WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

### STANDARD OF REVIEW

**{¶30}** The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), in which the Court

distinguished between "sufficiency of the evidence" and "manifest weight of the evidence," finding that these concepts differ both qualitatively and quantitatively. *Id.* at 386. The Court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. *Id.* at 386–387. "In other words, a reviewing court asks whose evidence is more persuasive -- the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25. The Court noted that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. *Thompkins, supra* at 387. "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Id.,* citing *Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

{¶31} To evaluate a manifest-weight claim, a court must review the entire record, weigh the evidence and all reasonable inferences, and consider the credibility of witnesses. *State v. McKelton,* 148 Ohio St.3d 261, 2016-Ohio-5735, 70 N.E.3d 508, at ¶ 328. The court must decide whether " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.' " *Id.,* quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶32} We note the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, 237 N.E.2d 212 (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and

credibility of each witness, something that does not translate well on the written page."

*Davis v. Flickinger,* 77 Ohio St.3d 415, 418, 1997–Ohio–260, 674 N.E.2d 1159.

## ANALYSIS

**{¶33}** Duru was charged with Tampering with Evidence, a violation of R.C. 2921.12(A)(2):

(A)    No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:

* * *

(B)    (2) Make, present, or use any record, document, or thing, knowing it to be false and with purpose to mislead a public official who is or may be engaged in such proceeding or investigation, or with purpose to corrupt the outcome of any such proceeding or investigation.

**{¶34}** Duru argues that the state provided insufficient evidence to support a verdict of guilty beyond a reasonable doubt and further that the jury lost its way and that its decision was against the manifest weight of the evidence. Duru's argument is an attempt to persuade this court that his version of the facts is the most credible and persuasive, a strategy that is typically used to win over a jury but which is generally of little value in the context of an appeal.

**{¶35}** The state presented evidence which supported a conclusion that Racheal Wheeler was not present on the day Duru allegedly assaulted A.R. and that the documents offered in support and her testimony were fabricated.  The state offered

evidence supporting its assertion that Duru created false check stubs, W-2s and other documents to support his contention that Racheal Wheeler was an employee of Radiant on February 18, 2019 who was present at Radiant on that date.  The state provided material evidence supporting its conclusion that Duru created these false documents with purpose to corrupt the outcome of the trial and coordinated with Wheeler to influence her to testify in his favor. The expert testimony regarding the location of Wheeler's cellphone, Wheeler's inconsistent pretrial statements and her employment applications showing a start date at Radiant long after the date of the alleged assault all support the state's contentions.

**{¶36}** Duru attacks four categories of evidence submitted by the state in an attempt to refute those contentions and argues that these alleged defects demonstrate that the conviction was not supported by sufficient evidence and was against the manifest weight of the evidence:

(1)  Cell phone tower record evidence of Racheal Wheeler's phones;

(2)  Lack of paychecks to Racheal Wheeler;

(3)  One employee's lack of knowledge of Racheal Wheeler;

(4)   Lack of reported withholding from Racheal Wheeler to the State Tax Department.

**{¶37}** Duru offers an alternative explanation for the facts that were presented to the jury by the state and concludes that this explanation must be accepted to the exclusion of the state.

**Cell Phone Tower Evidence**

**{¶38}** Duru concedes there were no phone calls or messages sent with the two numbers associated with Racheal Wheeler on February 25, 2019 near the cell towers closest to Radiant. Duru contends that it is more significant that there were no calls or messages sent with those two numbers associated with Rachel Wheeler from any other phone cell towers on February 25, 2019 and that therefore the evidence is insufficient to establish that Wheeler was not present at the Radiant Home Healthcare building.

**{¶39}** First, we note that Duru has made an error describing February 25, 2019 as the date of the alleged assault. The alleged assault occurred on February 18, 2019.

**{¶40}** Duru's argument that there were no calls made on the date of the alleged assault is refuted by the trial transcript. The state presented the testimony of Robert Moledor, an expert in the process of examining the records of cell phone companies and determining the location of a cell phone associated with a particular number.  He confirmed that he analyzed the data for the phone number allegedly used by Racheal Wheeler and found that evidence "the tower usage for this cell phone on February 18th, 2019 is not consistent with being at the location of the crime scene." (Transcript, p 140, lines 14-17).

**{¶41}** He analyzed the records for several dates after the alleged incident, February 20, 25 and 27, 2019, dates that Wheeler was allegedly working at Radiant, but the records show that during the hours of work on February 20 and 25, the phone was used at her home, not Radiant Healthcare, suggesting that Wheeler was not present at Duru's place of business.

**{¶42}** Duru argues that the lack of any calls or messages from Wheeler's phone through the cell towers near Radiant Home Health Care does not establish that Wheeler was not present at Radiant. While his argument is valid, the evidence provided by the state can reasonably be interpreted to support a conclusion that Wheeler was not working at Radiant as she claimed. The jurors had the discretion to accept or reject Wheeler's interpretation of the evidence or the state's argument. We find that the jury was provided sufficient evidence from which it could have concluded that Wheeler's testimony was not credible in the context of the surrounding facts without committing a manifest injustice. The trier of fact is free to believe all, part or none of the testimony of each witness. See *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). "We will not evaluate the credibility of witnesses or the relative weight of their testimony. *DeHass, supra.*" *State v. Harriston*, 63 Ohio App.3d 58, 63, 577 N.E.2d 1144 (8th Dist.1989).

### Lack of Paychecks / Lack of Reported Withholding

**{¶43}** The same analysis applies to the lack of documentation regarding Wheeler's salary. The state presented evidence that, prior to trial, Wheeler claimed that she received paper checks from Duru and that she cashed the checks at local businesses.

**{¶44}** The state demonstrated that no paper checks were issued to Wheeler by Radiant for the pay period including February 18, 2019 contradicting Wheeler's pretrial statement. Duru and Wheeler offered check stubs purportedly reflecting payments to Wheeler, but the amounts on those stubs matched amounts paid to other employees and neither offered cancelled checks. At trial, Wheeler contended that she had arranged to be paid in cash so her abusive husband would not discover that she was employed. Duru confirmed this arrangement, and stated that he paid her in cash for two months.

{¶45} The state also presented evidence that Duru did not file a business return showing withholding for Wheeler's employment at Radiant, and that the W-2 issued to Wheeler by Radiant did not match the total of the checks that Wheeler received for 2019. Duru claimed that his accountant passed away and that he was responsible for failing to file the business tax return and withholdings. He conceded that he did not file the withholding for any of his employees, not just Wheeler, and offered that this failure was not an attempt to construct a defense.

{¶46} The jurors were obligated to determine what testimony to accept and which to reject, and were free to determine that all or part of any witnesses' testimony regarding the financial records would be accepted in the context of this case. Duru implies that his position is the most credible an should be accepted over the conclusions drawn by the state. He made this argument to the jury and it appears that they rejected it and we find no reason within the briefs or the record to upset that decision.

### One Employee's Lack of Knowledge of Racheal Wheeler

{¶47} Duru's response to the State's assertion that an employee did not see Wheeler at Radiant is subject to the same fate. The state presented the testimony of another employee who claimed that she did not see Wheeler working. Duru explained that most employees worked from home, that they did not gather together and were not often in the office. The testimony creates a question of credibility and weight that must be resolved by the jury and the that fact that jury may have resolved this conflict in favor of the state does not demonstrate that the jury lost its way.

{¶48} Duru was indicted on August 13, 2020 so he knew that an official proceeding was in progress when he completed the steps alleged by the state. Duru

offered check stubs and other documentation supporting his contention that Racheal Wheeler was a Radiant employee who was present on the date the assault allegedly occurred, February 18, 2019. The state, after receiving this information, compiled evidence to demonstrate that the assertion that Racheal Wheeler was an employee who was present on the date of the assault was not consistent with the evidence and, in fact, Racheal Wheeler did not begin employment until October 2019. The state offered evidence from which the jury could conclude that Duru created false documentation to support his contention that Wheeler was an employee at the time of the alleged assault and that he offered it with the purpose of corrupting the outcome of the trial.

{¶49} After review of the record, we find that the state provided sufficient evidence to support a conviction, beyond a reasonable doubt, for a charge or Tampering with Evidence and that this is not a case where the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed.

{¶50}  Duru's assignment of error is denied and the decision of the Fairfield County Court of Common Pleas is affirmed.

By: Baldwin, J.

Gwin, P.J. and

Hoffman, J. concur: